# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| WILLIFORD ROOFING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:16-cv-01830-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| ENDURANCE AMERICAN SPECIALTY | ) | |
| INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on defendant Endurance American Specialty Insurance Company's ("Endurance") motion for summary judgment, ECF No. 28. For the reasons set forth below, the court denies Endurance's motion for summary judgment.

## I. BACKGROUND

This insurance coverage action arises out of an underlying state court action, Williford Roofing, Inc. v. Anne Devore a/k/a/ Annette N. Devore and James Bale, Case No. 2014-CP-10-2606 (the "Underlying Lawsuit"). Def's Mot. at 2. In the Underlying Lawsuit, Williford alleged that a homeowner, Annette Devore ("Devore"), owed Williford $5,449 for roofing work performed on her home in James Island, South Carolina. Id. Devore filed an answer to the complaint and asserted counterclaims against Williford stemming from the rainwater that entered her home after Williford removed the shingles from her home and allegedly left it exposed to heavy rains. Pl.'s Resp., Ex. 2, Devore Counterclaims. Devore set forth causes of action for negligence, breach of express and implied warranties, breach of contract,

1

intentional infliction of emotional distress, fraud and misrepresentation, negligent misrepresentation, and unfair trade practices. Id. Williford then filed an amended reply to the counterclaim and asserted claims of negligence, breach of contract, breach of warranties, and indemnification against James Bayle, a subcontractor who performed the actual roofing work on Devore's home in an effort to recover any damages that it owed Devore. Id. at 2. The Underlying Lawsuit eventually settled for $35,000, and Williford incurred attorney's fees and defense costs in the amount of $29,107.50. Id at 3.

On April 29, 2016, Williford filed an action against Endurance American Specialty Insurance Company, Essex Insurance Company, and Canopius US in the Charleston County Court of Common Pleas, which was removed to this court on June 9, 2016. ECF No. 1. Williford asserts claims against Endurance for breaching its contractual duty to defend and indemnify Williford in the Underlying Action, and acting in bad faith in failing to defend and indemnify Williford. The case was removed to this court on June 6, 2016. Endurance filed the instant motion for summary judgment on all of Williford's claims on December 14, 2016, ECF No. 28, to which Williford responded on January 16, 2017, ECF No. 38, and Endurance replied on January 23, 2017, ECF No. 42. The matter has been fully briefed and is now ripe for the court's review.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil

Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

   Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must set forth specific facts showing that there is a genuine issue for trial." Bouchat, 346 F.3d at 522 (internal quotations omitted). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

Endurance moves for summary judgment on each of Williford's claims as well as for declaratory relief. Endurance insured Williford pursuant to a commercial general liability policy ("the Policy") at the time of the incidents giving rise to Devore's counterclaims in the Underlying Action. After Williford learned of such counterclaims, it filed an insurance claim under the Policy, which Endurance investigated and notified Williford that it was denying coverage pursuant to the Roofing Limitation Endorsement contained in the Policy. Def.'s Mot., Ex. 4, Endurance Letter. The Policy states that Endurance will defend and indemnify Williford for any "occurrences" that result in "bodily injury" or "property damage." Id., Ex. 5, Endurance Policy. Endurance contends, however, that coverage is barred under the Roofing Limitation Endorsement limitation.[1] Id. at 19. Since there is no coverage for any of the counterclaims asserted against Williford in the Underlying Action, Endurance asks the court for summary judgment on Williford's breach of contract and bad faith claims. Id. at 21.

**1.     Coverage is barred under the Roofing Limitation Endorsement**

Endurance argues that coverage is barred under the Roofing Limitation Endorsement, which provides as follows:

> It is hereby agreed that we do not cover claims, loss, costs or expense due to "property damage" arising out of wind, hail, snow, rain, ice or

---

[1]   Although the issue of whether Devore's counterclaims constitute "occurrences" under the Policy was discussed extensively in Endurance's briefing on this motion, during the January 30, 2017 hearing on this matter Endurance did not contest that the counterclaims were "occurrences" under the Policy. Accordingly, for the purposes of this motion the court assumes without holding that Devore's counterclaims are "occurrences" and focuses its analysis on the Roofing Limitation Endorsement.

4

> any combination of these unless a suitable waterproof temporary covering, able to withstand the normal elements and large enough to cover the area being worked on, has been properly secured in place. This cover is to be put into place any time the contractor leaves the job site. This limitation applies to any sub-contracted work performed on behalf of the insured, including any sub-contractors of sub-contractors.

Def.'s Mot., Ex. 6, Endurance Policy at 53. The applicability of the Roofing Limitation Endorsement to bar coverage for Williford turns on whether a "suitable waterproof temporary covering" had been properly secured on the Devore roof. A review of the affidavits and deposition testimony of Williford employees and Devore's counterclaims demonstrate that there is a factual dispute over whether a covering had been secured on the roof. Since the Policy does not define the term "suitable" and there is no judicially-determined definition of the term, the court finds that there is a genuine issue of material fact on whether the Roofing Limitation Endorsement bars coverage.

In South Carolina, insurance policies are subject to the general rules of contract construction, and a reviewing court must give the clear policy language its "plain, ordinary, and popular" meaning. Nationwide Mut. Ins. Co. v. Commercial Bank, 479 S.E.2d 524, 526 (S.C. 1996). Insurers generally have a right to limit their liability so long as they are "not in contravention of public policy or a statutory prohibition." S.C. Farm Bureau Mut. Ins. Co. v. Dawsey, 638 S.E.2d 103, 104–05 (S.C. Ct. App. 2006). However, exclusions in insurance policies are to be narrowly construed in favor of coverage, although "[c]ourts may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy." S.C. Mun. Ins. & Risk Fund v. City of Myrtle Beach, 628 S.E.2d 276, 278 (S.C. Ct. App. 2006).

5

A review of the deposition testimony and the pleadings in the Underlying Action reveals a factual dispute over whether and to what extent the roof was covered at the time of the rains.  Counsel for Devore wrote a letter to Endurance dated August 22, 2013 demanding payment under the Policy, alleging that Williford "failed to <u>adequately cover</u> the open portions [of Devore's roof] during heavy rains."  Def.'s Mot., Ex. 4, Devore Letter at 6 (emphasis added).  Endurance relied on this letter in denying coverage, citing Williford's failure to cover Devore's roof as a bar to coverage.  Endurance Letter.  However, during this initial investigation of Devore's claim the manager at Williford, Jill Hunt ("Hunt"), informed Endurance that Devore's roof was "dried in" on the night that it rained.  ECF No. 38, Ex. 1 Hunt Aff. ¶¶ 8-9.  "Drying in" is an industry practice where the roof is covered with tar paper to prevent moisture intrusion.  <u>Id.</u>  Moreover, Devore's counterclaim itself alleges that Williford "fail[ed] to notice rainwater and other exterior environmental elements coming into Ms. Devore's house <u>through their roof covering</u>; [and] in failing to stop the rainwater and other exterior environmental elements coming into Ms. Devore's house <u>through their roof covering</u>[.]"  Pl.'s Resp., Ex. 2, Devore Counterclaim at ¶¶ 27, 34(c)–(d).  This factual dispute between Williford and Endurance over whether the roof was actually covered on the night it rained must be resolved in favor of Williford as the non-moving party.  Accordingly, the court finds that the roof was covered at the time of the rain for the purposes of this summary judgment motion.

Endurance contends that even if Devore's roof was covered on the night that it rained, it was not "suitably" covered and so the Roofing Limitation Endorsement acts to bar coverage.  The Policy does not define the term "suitable."  It is well-settled that

6

a term in an insurance policy is not ambiguous just because the policy does not provide a definition for the term. Bardsley v. Gov't Emps. Ins. Co., 747 S.E.2d 436, 440 (S.C. 2013) ("The provision also is not ambiguous merely because its terms are undefined in the policy."). Where the term is not defined by the Policy, but has been judicially determined to have a certain meaning, the term is no longer ambiguous. Morris v. Auto-Owners Ins. Co., No. 3:16-cv-00880, 2016 WL 7473430, at *4 (D.S.C. Dec. 29, 2016). Here, however, a review of the relevant case law did not reveal any South Carolina cases that provided a judicially-determined definition. Endurance attempts to clarify what the term means by explaining that "[a]ny covering that did not prevent water from intruding into a residence clearly would not be 'suitable.'" Def.'s Reply at 3. However, adopting such a broad interpretation of the term "suitable" would essentially bar any party trying to recover insurance proceeds from Endurance for water intrusion under any circumstances. The court refuses to assume such illusory coverage under the Policy.

In Pitts v. Glen Falls Indemnity Co., 72 S.E.2d 174 (S.C. 1952), the court ruled that an insurance policy's terms must be construed liberally in favor of the insured, and if the language is ambiguous, the construction most favorable to the insured should be adopted. Following Pitts, the court construes the term "suitable" in favor of Williford as the insured. See WDI Meredith & Co. v. Am. Telesis, Inc., 597 S.E.2d 885, 888 (S.C. 2004) (finding term "back-out penalty" ambiguous and resolving ambiguity against drafter of the contract after explaining that "[n]o South Carolina case or statutory provision has been cited to us which defines the term, nor have we been successful in locating a definition in South

7

Carolina jurisprudence"). The court finds that the suitability of the roof covering on Devore's roof raises a genuine issue of material fact and denies Endurance's summary judgment motion on this count.

### 2.     Breach of Contract and Bad Faith Claims

Endurance also moves for summary judgment on Williford's breach of insurance contract and bad faith claims, arguing that these claims are barred as a matter of law because "it is clear that there was no coverage under the Policy for [Devore's counterclaims] asserted against Williford." Def.'s Mot. 21. An insurer owes a duty of good faith to satisfy its duties to both defend and indemnify within policy limits. Tyger River Pine Co. v. Maryland Cas. Co., 170 S.E. 346 (S.C. 1933). While there may been no duty to provide coverage,[2] "the duty to defend in South Carolina is broader than the duty to indemnify." Liberty Life Ins. Co. v. Commercial Union Ins. Co., 857 F.2d 945, 950 (4th Cir.1988) (applying South Carolina law). Viewing the facts in the light most favorable to Williford, the court finds that a reasonable juror could find that Endurance both breached its insurance contract and acted in bad faith when it refused to defend the Underlying Action. This is sufficient for the court to deny Endurance's summary judgment motion on this count.[3]

---

[2]     The court notes that there is a genuine issue if the Roofing Limitation Endorsement bars coverage, but makes no finding on if there is a duty to indemnify here.

[3]     Endurance relies on Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983), to argue that the court should grant summary judgment because Williford, as the insured, cannot recover actual damages under both a breach of contract and a bad faith cause of action. ECF No. 28 at 22. However, in Nichols, the jury had returned a verdict in favor of the insured on both the breach of contract and tort causes of action. Here, this case has not proceeded to trial—it is entirely possible that a jury could return a verdict of actual damages for Williford on the breach of contract action but not the bad faith cause of action. In any event, Nichols certainly

8

An insurer's duty to defend is based on "the allegations of the underlying complaint" and the terms of the policy. B.L.G. Enterprises, Inc. v. First Fin. Ins. Co., 514 S.E.2d 327, 330 (S.C. 1999). The insurer is obligated to defend if the underlying complaint creates even "a possibility of coverage" under the insurance policy. Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 573 (D.S.C. 2006) (quoting Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (1994)). Endurance argues that it did not have a duty to defend because the counterclaims did not create a possibility of coverage, relying heavily on the August 22, 2013 letter from Devore's counsel stating that Williford "failed to adequately cover the open portions [of Devore's roof] during heavy rains" as evidence of the applicability of the Roofing Limitation Endorsement to bar coverage. Endurance Letter. It is true that an insurer's duty to defend is not strictly controlled by the complaint. USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791 (S.C. 2008). However, an evaluation of the complaint in the underlying action is the first step that an insurer must take in determining whether it has this duty. See Isle of Palms Pest Control Co., 459 S.E.2d at 319. In USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 797 (S.C. 2008), the South Carolina Supreme Court reiterated this principle:

> In our view, the circuit court should have first determined whether the allegations in [the complaints] brought the claims within policy coverage. Instead, the circuit court omitted this step and considered factual allegations presented to it at the summary judgment stage that were not part of the complaints.

When Williford received notice of Devore's counterclaims, Williford sent a letter to Endurance requesting that Endurance defend the action. ECF No. 38, Ex. 2 Williford

---

does not stand for a proposition that entitles Endurance to summary judgment on Williford's breach of contract and bad faith claims.

9

Letter. While Endurance was allowed to consider extrinsic evidence such as the August 22, 2013 letter in determining its due to defend, Endurance skipped the first step—instead of construing the allegations in the underlying complaint in favor of coverage, with all doubts about whether Devore's roof had been covered and if it had been covered "suitably" in Williford's favor, Endurance denied coverage altogether. A trier of fact could find that Endurance acted in bad faith and breached its contract with Williford when it refused to defend the Underlying Action, so the court denies the motion for summary judgment.

### 3.     Declaratory Judgment on Coverage and Duty to Defend

Endurance asks the court to issue a declaratory judgment that there was no coverage under the Policy and that Endurance had no duty to defend or indemnify Williford for the claims asserted against it in the Underlying Action. Since the court finds there is a genuine issue of material fact if the Roofing Limitation Endorsement barred coverage, the court denies summary judgment on the declaratory judgment count.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Endurance's motion for summary judgment.

**AND IT IS SO ORDERED**.

                                                **DAVID C. NORTON**
                                                **UNITED STATES DISTRICT JUDGE**

**February 6, 2017**
**Charleston, South Carolina**

.